494 So.2d 600 (1986)
K-MART CORPORATION, INC.
v.
Bonnie Ruth PENDERGRASS.
84-569.
Supreme Court of Alabama.
June 6, 1986.
Rehearing Denied September 12, 1986.
*601 John F. Porter III of Livingston, Porter & Paulk, Scottsboro, for appellant.
Robert H. Ford of Brinkley & Ford, Huntsville, for appellee.
MADDOX, Justice.
This is a defamation case involving a corporation and its employee, in which the employee sued her employer and received a jury verdict in her favor. The corporation contends the verdict should have been set aside because the employee failed to prove publication.
On Saturday, February 20, 1982, in the K-Mart store in Scottsboro, a cashier found on the floor $11.05 that she could not account for. The cashier turned the money over to plaintiff, Bonnie Ruth Pendergrass, the checkout supervisor. After a discussion with Ferrill Rankin, the merchandise supervisor, about what to do with the money, plaintiff put the $11.05 in an envelope, wrote the names of all on-duty cashiers on the envelope, stamped "K-Mart" on it, and took it home with her.
K-Mart had at the time a standard, detailed procedure for handling money found and unaccounted for, that being that such money was to be properly identified and placed in the store safe. If, after a period of sixty days, the money was still unaccounted for, it became the property of the finder. Plaintiff, being the checkout supervisor and responsible for placing all the money counted and bagged at checkout time into the store safe, was aware of the procedure for handling unaccounted-for money. Yet, on two prior occasions, when unaccounted-for money had been turned over to her, she had put it in the service desk, only to find the money missing the next day. After this happened, plaintiff began taking unaccounted-for money home with her and returning it to the store the next day. She told at least one K-Mart employee about her new procedure for dealing with unaccounted-for money.
The day after the $11.05 was found and plaintiff took it home with her, the cash register receipts revealed that one of the registers was $11.05 short. The store manager, David Smith, asked Doris DeRose, the personnel manager, to investigate the shortage. Ms. DeRose called plaintiff at home, and plaintiff told her that she had taken the $11.05 home and that she still had it. According to plaintiff, Ms. DeRose stated, "Well, oh good. We were worried about it."
Plaintiff was off on Monday. Tuesday morning when she went in to work, she took the money to the manager, David Smith, who was in Ms. DeRose's office. K-Mart's district loss control director, Roger Hurt, was with Mr. Smith. Mr. Hurt had come to the Scottsboro store to investigate the handling of the $11.05 found the previous Saturday. Plaintiff gave the envelope containing the money to Mr. Smith. Mr. Hurt questioned plaintiff about her reason for departing from K-Mart procedure and keeping the money in her possession. The discussion developed into a heated argument. Plaintiff said that she was not a thief and "didn't need their damn money," whereupon Mr. Hurt filled out a separation report and requested that plaintiff sign it.
The separation report read, in pertinent part, as follows:
"Violated company policy by failing to report and turn in money found at register # 1 the same day it was found. It was discovered in her possession two days later."
Plaintiff refused to sign it and left the office. She collected her accrued pay, and angrily left the store, and on her way out told at least one person that she was going home and "get out of this you-know-what." There was also testimony to the effect that *602 before leaving the store, plaintiff went to the employee lounge and verbally expressed her anger at K-Mart.
Ferrill Rankin, the merchandise supervisor, testified that the afternoon after plaintiff left K-Mart's employment, she overheard Doris DeRose, who, as personnel manager, was plaintiff's and Rankin's superior, tell someone (this person was not seen by Ms. Rankin and was never identified at trial) that K-Mart had fired plaintiff. According to Ms. Rankin, she approached Ms. DeRose, asked her why plaintiff was fired, and DeRose said, "For stealing." Ms. Rankin testified that she then went to the employee lounge, and that everyone there was talking about plaintiff's being fired for stealing.
Ms. DeRose testified that she never told anyone that plaintiff had been fired for stealing. David Smith and Roger Hurt also testified that they never told anyone that plaintiff was fired for stealing. The current manager of the Scottsboro K-Mart, however, testified that on one occasion Roger Hurt told him that plaintiff had been fired for misappropriation of company funds.
Plaintiff, herself, testified that she related the circumstances surrounding her discharge only to her husband. Yet, sometime after plaintiff left K-Mart, plaintiff's mother heard a rumor in the community that K-Mart had fired her daughter for stealing. Plaintiff's brother-in-law also heard the rumor in a restaurant in a neighboring town.
At trial, at the close of all the evidence, K-Mart moved for a directed verdict on the grounds that, inter alia, plaintiff had not proved publication of the alleged defamation, malice, or damages. The trial court denied K-Mart's motion and sent the case to the jury. The jury returned a verdict for plaintiff in the amount of $243,000.00. K-Mart moved for a judgment notwithstanding the verdict, or, in the alternative, for a new trial, based, inter alia, on those grounds previously asserted in its directed verdict motion. A hearing on K-Mart's JNOV-new trial motion was held, and the court denied the motion. K-Mart appeals.
Plaintiff alleges four separate instances of defamation based on the above facts:
1. the separation report;
2. one of K-Mart's employees (Roger Hurt) told another K-Mart employee (the current manager) that plaintiff had been fired for misappropriation of company funds;
3. one or more of K-Mart's employees told someone outside the corporation that plaintiff had been fired for stealing; and,
4. one of K-Mart's employees (Doris DeRose) told another K-Mart employee (Ferrill Rankin) that plaintiff had been fired for stealing.
Defendant K-Mart argues on appeal that the trial court erred in denying its motion for judgment notwithstanding the verdict because plaintiff did not prove that K-Mart published the alleged defamation.
Publication of the alleged defamatory matter is, of course, an element of a plaintiff's prima facie defamation case. Montgomery v. Big B, Inc., 460 So.2d 1286 (Ala.1984); Willis v. Demopolis Nursing Home, Inc., 336 So.2d 1117 (Ala.1976). A plaintiff usually satisfies the publication element by proof of communication of the defamatory matter to someone other than himself. W. Prosser, The Law of Torts § 113, at 776 (4th ed. 1971). K-Mart maintains that the instant case is controlled by a "special" publication rule applicable to corporations and set forth in Burney v. Southern Railway Co., 276 Ala. 637, 165 So.2d 726 (1964), and McDaniel v. Crescent Motors, Inc., 249 Ala. 330, 31 So.2d 343 (1947).
In McDaniel this Court said:
"The fact that the words were spoken by one of defendant's managers in the presence of two other managers in the course of transacting defendant's business, and in the line of their duty as officers of defendant, all in respect to defendant's relations with plaintiff as an employee against whom complaint had been made in connection with his duties *603 as an employee and in respect to that complaint does not alone make the conversation a publication so as to constitute slander." 249 Ala. at 332, 31 So.2d at 345.
In Burney, this Court reaffirmed the McDaniel holding, and held further:
"[W]here [a] letter is dictated by a corporate employee to a fellow corporate employee in the course of transacting the corporation's business and in the line of their duty as employees of the corporation and the letter is sent to another fellow employee and it is in respect to that employee's relations with the corporation, there is not sufficient publication to sustain an action for libel." 276 Ala. at 642, 165 So.2d at 730.
Plaintiff, on the other hand, argues that the early cases of Ferdon v. Dickens, 161 Ala. 181, 49 So. 888 (1909), and Berry v. City of New York Insurance Co., 210 Ala. 369, 98 So. 290 (1923), are controlling under the instant facts. Plaintiff's argument, however, is misplaced. This Court has expressly limited the Ferdon and Berry holdings so that they are inapplicable to the instant facts involving allegedly defamatory communication between corporate employees.
In United States Steel Corp. v. Darby, 516 F.2d 961 (5th Cir. 1975), the Fifth Circuit Court of Appeals correctly applied the "special" McDaniel/Burney publication rule to uphold a summary judgment for United States Steel Corporation because there had been no publication of the allegedly defamatory matter. The court explained the evolution of the McDaniel/Burney publication rule and its relationship to the Ferdon and Berry holdings as follows:
"Alabama originally adopted a very liberal interpretation of the publication requirement in defamation cases. In Ferdon v. Dickens, 161 Ala. 181, 49 So. 888 (1909), the Alabama Supreme Court found that dictation of a libelous letter to a stenographer constituted sufficient publication to maintain an action for defamation. But in Burney v. Southern Railway Co., 276 Ala. 637, 165 So.2d 726 (1964), the Alabama Supreme Court limited the Ferdon principle in the corporate context. In Burney, the Alabama court reviewed a lower court's grant of summary judgment for the defendant who had dictated an allegedly libelous memo to Burney and another person accusing them of falsifying their time tickets for July 22, and July 23, 1958. The memo was never shown to anyone other than a Southern Railway Company employee. After reviewing the relevant Alabama decisions, Justice Merrill stated: "`We reaffirm the holding in Ferdon v. Dickens, 161 Ala. 181, 49 So. 888, and Berry v. City of New York Ins. Co., 210 Ala. 369, 98 So. 290, but also reaffirm the limitations of these two cases as limited by McDaniel v. Crescent Motors, Inc., 249 Ala. 330, 31 So.2d 343, 172 A.L.R. 204, that where the letter is dictated by a corporate employee to a fellow corporate employee in the course of transacting the corporation's business and in the line of their duty as employees of the corporation and the letter is sent to another fellow corporate employee and it is in respect to that employee's relations with the corporation, there is not sufficient publication to sustain an action for libel.' 165 So.2d at 730-31." Id. at 963-64.
Thus, in a defamation case involving a corporate defendant, the first question must be "Was there a publication of the allegedly defamatory matter?" This question is answered by using the McDaniel/Burney test, which we most recently restated in Dixon v. Economy Co., 477 So.2d 353, 354 (Ala.1985):
"Communications among the managerial personnel of a corporation about the company's business do not constitute a publication, under the rule of McDaniel v. Crescent Motors, Inc., 249 Ala. 330, 31 So.2d 343 (1947)."
We now turn to the instant facts and ask, "Was there a publication of the allegedly defamatory matter?"
*604 Plaintiff's first claim is that the separation report was defamatory. Roger Hurt, K-Mart's district loss control director, filled out the report in the presence of plaintiff and the store manager, David Smith. Doris DeRose, the personnel manager, whose duties included maintaining plaintiff's personnel file and signing separation reports, also saw the report when she signed it. Finally, the report was sent to K-Mart's Loss Prevention Control Department in Troy, Michigan. There is no evidence that plaintiff's separation report was seen by anyone but corporate managers or employees whose duties included the handling of such reports. None of the above communications constitutes publication under the McDaniel/Burney rule.
Plaintiff bases her second allegation of defamation on the testimony of K-Mart's current manager that Roger Hurt, the district loss control director, told him that plaintiff was fired for misappropriation. The current manager of the store had never met plaintiff, and when he received legal papers concerning the instant lawsuit, he asked Mr. Hurt what they were about. According to the manager, Mr. Hurt told him that plaintiff had instituted the instant lawsuit against the company and that she was fired for misappropriation. This communication is not a publication. The communication was between managerial employees and concerned corporate business, specifically, a pending lawsuit against the corporation. This falls squarely within the McDaniel/Burney "no publication" rule.
Third, plaintiff alleges that one or more of K-Mart's employees told someone outside the corporation that plaintiff had been fired for stealing. Plaintiff relied solely on inferences to prove that someone at K-Mart communicated with someone outside the corporation about her discharge. Plaintiff's entire proof of this alleged defamation is that members of the Scottsboro community had heard that she was fired for stealing. Therefore, according to plaintiff, it follows that someone at K-Mart told someone in the community that plaintiff was fired for stealing. This evidence was legally insufficient to establish publication. Publication is not "established by rumor or report." Weir v. Brotherhood of Railroad Trainmen, 221 Ala. 494, 497, 129 So. 267, 270 (1930).
Moreover, even if plaintiff had established with legally sufficient evidence that there was a communication from a K-Mart employee to an outsider, plaintiff still failed in proving that K-Mart itself had published the alleged defamation. Basic principles of agency law operate within the area of defamation law, of course, and this Court has held that if "publication is sought to be shown by an agent, it does not bind the principal as a publication ..., unless the act of such agent was within the line and scope of the agent so acting or employed." Weir, supra, 221 Ala. at 498, 129 So. at 270. Furthermore, "where the evidence is undisputed, agency vel non, its character and extent, are questions of law for the court." Clark & Barker v. Eufaula Brick Works, 205 Ala. 545, 547, 88 So. 669, 670 (1921). In the instant case, the uncontested and uncontroverted testimony at trial was that K-Mart corporate policy allowed its personnel managers to release only "neutral" information in response to an inquiry about an employee's employment and discharge.
Personnel manager Doris DeRose's job duties included responding to inquiries from outside the corporation about a former employee's work record and discharge. Ms. DeRose testified as follows:
"Q. If you as personnel manager are going to give out information about Bonnie Pendergrass, say, if she asked for a reference, what information would be the right information to give about Bonnie?
"A. The only information that I can give out about anybody, whether it would be Bonnie or myself or anybody that has left the store, is the day that she started work, what her position was and then we give the K-Mart name and address and that's all that we're allowed to give *605 and that's company policy and that's for anybody.
"Q. So, as far as K-Mart is concerned, thenlet's make sure that I understand you. The only information that you say is properly made available to the public is what?
"A. Beginning date
"Q. Beginning date?
"A. Beginning date and ending date
"Q. Ending date?
"A. and what her position was
"Q. Her position?
"A. Yes, and name and address of the company and my signature as personnel manager.
"Q. Your signature?
"A. Yes.
"Q. And that's all you can give out?
"A. That's right, sir.
"Q. And that's direct from K-Mart headquarters?
"A. Yes, sir.
"Q. And that would go along then with Mr. Tynan Brown's statement to lawyer Robert Hodges when he says `please advise Mrs. Pendergrass that if K-Mart, Number 9639, should receive any written request for references from her prospective employers other than the K-Mart Corporation, then only neutral information will be provided'
"A. Yes.
"Q. the information contained in such employment references will be limited to the dates of her employment and her assigned position?
"A. That's right.
"Q. And anything else would violate K-Mart policy, wouldn't it?
"A. Yes, because that's all that we're allowed to give out."
Thus, even assuming legally sufficient proof of a communication between a K-Mart employee and an "outsider," according to the uncontroverted evidence such a communication would be outside the line and scope of the employee's employment and would not constitute a publication of defamatory matter by K-Mart.
Finally, plaintiff alleges that K-Mart defamed her when Doris DeRose, the personnel manager, told another K-Mart employee, Ferrill Rankin, that plaintiff had been fired for stealing. As with the third alleged instance of defamation, the evidence of the occurrence of this communication is slight, at best. Nonetheless, even if we again assume the legal sufficiency of the proof of the communication's occurrence, this communication fails as proof of K-Mart's publication of the alleged defamation. As with the third alleged instance of defamation, this communication by Doris DeRose, if in fact it was made, was made outside the uncontroverted line and scope of her employment. According to her own testimony, she was not authorized by K-Mart to release this kind of information to anyone. Furthermore, if DeRose did tell another K-Mart employee or an "outsider" that plaintiff was fired for stealing, such a communication could not have been in furtherance of any conceivable corporate business. Thus, this alleged communication between Doris DeRose and Ferrill Rankin concerning plaintiff's discharge does not constitute a publication by K-Mart which would support an action for defamation against the corporation.
Because we find that plaintiff failed to prove even a scintilla of evidence that K-Mart published the alleged defamation, the judgment below is due to be, and it hereby is, reversed, and judgment is rendered for the defendant.
REVERSED AND JUDGMENT RENDERED.
TORBERT, C.J., and BEATTY, HOUSTON and STEAGALL, JJ., concur.
JONES, ALMON, SHORES and ADAMS, JJ., dissent.
SHORES, Justice (dissenting):
I dissent. The majority reverses the trial court's refusal to grant K-Mart's motion for directed verdict, holding that the plaintiff *606 failed to prove even a scintilla of evidence that K-Mart published the alleged defamation. I cannot agree that the trial court erred in submitting this case to the jury.
A careful review of the evidence convinces me that a jury issue was made out on the issue of publication, even under the harsh rule adopted by the majority. Clearly, there was evidence from which the jury could find that there was a publication of the defamatory statement.
Roger Hurt, K-Mart district loss control director, told the current manager that the plaintiff had been fired for stealing, after he knew that the statement was false, and one or more of K-Mart's employees told someone outside the corporation the same thing. It was generally known in the community that K-Mart had said it fired the plaintiff for stealing. Therefore, I believe the trial court correctly submitted the case to the jury and did so under a proper charge.
I would affirm the judgment of the trial court.
JONES, ALMON and ADAMS, JJ., concur.