655 So.2d 986 (1995)
Donald SCHRIMSHER
v.
LIBERTY NATIONAL LIFE INSURANCE COMPANY and Joseph Campbell.
1931060.
Supreme Court of Alabama.
February 24, 1995.
*987 Garve Ivey, Jr. of Wilson & King, Jasper, Charles E. Harrison of Wilson & King, Fayette, for appellant.
Harold F. Herring and H. Carey Walker III of Sadler, Sullivan, Herring & Sharp, P.C., Huntsville, for Joseph Campbell.
Carol Sue Nelson and Thomas A. Davis of Constangy, Brooks & Smith, Birmingham, for Liberty Nat. Life Ins. Co.
ALMON, Justice.
Donald Schrimsher appeals from a summary judgment in favor of Liberty National Life Insurance Company and Joseph Campbell in Schrimsher's action alleging defamation. The issue is whether the alleged defamatory statements made by a manager for Liberty National to agents of the company were published, and, if published, whether they were conditionally privileged.
Donald Schrimsher was an insurance agent for Liberty National in the Huntsville, Alabama, office. Schrimsher's duties included selling, collecting on, and servicing insurance contracts. Schrimsher reported to his immediate supervisor, Mark Allen, who was a sales manager for Liberty National; and to Joe Campbell, the district manager in the Huntsville office.
In September 1990, while Schrimsher was out of town on vacation, Allen went to Schrimsher's home and obtained Schrimsher's policy collection book, which contained information about the policies and accounts Schrimsher serviced. In reviewing the policy collection book, Allen discovered an apparent $250 deficiency between the amount Schrimsher had collected and the amount he had remitted to Liberty National.
Liberty National offered evidence that it has a strict company policy by which agents will be terminated if there is a deficiency. Pursuant to this policy Schrimsher was terminat2d from his agency relationship with Liberty National, during the week of September 15, 1990. According to the affidavit of Brert Duncan, an agent of Liberty National, on Monday September 17, before Schrimsher had returned from vacation, Campbell told Duncan that Schrimsher had been terminated for "misappropriating or stealing company funds." Duncan says that Campbell made this statement in the Liberty National office before Schrimsher returned from vacation and before Schrimsher had been notified of his termination. Duncan's affidavit further stated that he was not in a managerial or secretarial role with Liberty National and that he was a co-worker with Schrimsher. There was also evidence that before Schrimsher returned from vacation Campbell told several other agents of Schrimsher's alleged misappropriation.
After Schrimsher filed his defamation action against Liberty National and Campbell, both defendants moved for a summary judgment, asserting that the statements either were not published or were conditionally privileged. The circuit court entered a summary judgment, holding that Campbell's statements were conditionally privileged communications and that Schrimsher had failed to present substantial evidence of actual malice after the defendants had made a prima facie showing of the lack of a genuine issue as to any material fact.
This Court recently addressed the issues of publication and the conditional privilege as they relate to defamation actions brought against corporate defendants. Cantrell v. North River Homes, Inc., 628 So.2d 551 (Ala.1993). In Cantrell, we considered whether statements made by an agent of a corporation to other employees were published and whether they were privileged communications.
"`To establish a prima facie case of defamation, the plaintiff must show that defendant[s] published a false and defamatory statement concerning the plaintiff to a third person. Statements made subject to a qualified [or conditional] privilege are not *988 actionable unless the plaintiff can prove that the defendant acted with malice.
"`. . . .
... [A] communication may be conditionally privileged if it is one in which the party has an interest, and is made to another having a corresponding interest. More specifically, this Court has held that communications among employees in the course of transacting the company's business and in the proper scope of the employee's duties do not constitute a publication."
628 So.2d at 553 (quoting Atkins Ford Sales, Inc. v. Royster, 560 So.2d 197, 200-01 (Ala. 1990)).
Cantrell further stated:
"This rule of `no publication' among employees indicates that there is no publication, and thus no actionable defamation, la's long as a communication to a nonmanagerial employee falls within the proper scope of that employee's knowledge or duties.'"
628 So.2d at 553 (quoting Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1093 (Ala. 1988)).
The circuit court erred in determining that the alleged statements by Campbell to Duncan and the other agents were conditionally privileged communications. Campbell's alleged statements indicating that Schrimsher was terminated for misappropriating funds from the company could not have had any bearing on the other agents' duties or responsibilities.[1] Thus, we must conclude that Campbell's alleged statements were "published." There was no evidence that the other agents, who were merely co-workers with Schrimsher, had any interest corresponding to the interest the management of Liberty National had in the reason for Schrimsher's termination. As Duncan stated in his affidavit, he was a co-worker with Schrimsher and was not in any managerial or secretarial role. Thus, Campbell's alleged statements were not made under a conditional privilege.
Liberty National secondarily contends that, if these statements were not privileged, they were not made within the line and scope of Campbell's employment and thus that the company cannot be liable for those statements. In support of this argument Liberty National asserts that it has a strict company policy requiring extreme confidentiality about matters relating to insureds and employees and that in making those alleged statements Campbell was acting outside his authority. This argument is incongruous with Liberty National's argument that the communications were privileged on the basis of a duty to inform the other agents about Schrimsher's activities. Campbell, as the district sales manager of Liberty National, made these statements to employees who had no interest in such matters. However, that does not preclude a finding that these alleged statements were made in the line and scope of Campbell's employment.
Campbell was in charge of the Huntsville office and had the responsibility for supervising the agents, including Schrimsher, Duncan, and the other agents to whom he allegedly made the defamatory statements. He decided to fire Schrimsher pursuant to authority given him by Liberty National, and we cannot say as a matter of law that his informing the other agents of the reason for firing Schrimsher exceeded the scope of authority granted to him by Liberty National. A finding by a jury holding Liberty National liable under the theory of respondeat superior for Campbell's statements would not be inconsistent with our holding that the statements were not conditionally privileged. Dealing with personnel matters was in the general line and scope of Campbell's duties, but the record contained no evidence that it was within the "proper scope" of the agents' "knowledge or duties," Cantrell, supra, for them to know Campbell's reason for firing Schrimsher.
Liberty National and Campbell's other arguments have insufficient merit to warrant further discussion.
*989 The summary judgment is reversed, and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
HOUSTON, INGRAM, COOK and BUTTS, JJ., concur.
MADDOX, J., concurs specially. SHORES, J., recused.
MADDOX, Justice (concurring specially).
Originally, I believed that this Court's holding was contrary to the holding in Mart Corp. v. Pendergrass, 494 So.2d 600 (Ala.1986). However, upon further examination, I have concluded that this case is factually distinguishable from K-Mart. In Mart, the McDaniel/Burney test was used to determine if there had been a publication of the defamatory matter. 494 So.2d at 603. In that case, unlike this case, the communication concerned corporate business and was only between managerial employees; specifically, it concerned a pending lawsuit against the corporation. In this case, the plaintiff's district manager told the plaintiff's coworker, who had no managerial or secretarial role, that the plaintiff had been terminated for misappropriating funds. This does not fall within any of the no-publication exceptions. Therefore, I concur.
NOTES
[1] In fact, Liberty National has a policy of confidentiality regarding employee matters. See Liberty National's argument, discussed below, that Campbell's statements were outside the line and scope of his duties.