Phillip E. Clark appeals from a summary judgment for America's First Credit Union ("AFCU") on his claim of breach of contract and defamation. We affirm.
In February 1984, Clark was hired by AFCU as a collections clerk in its Anniston branch office. Upon his employment, Clark received an employment manual that outlined AFCU's employment policies and procedures on such matters as working *Page 1369 
hours, work etiquette, job appraisals, termination of employment, and fringe benefits. The preface to the manual stated: "The Credit Union reserves the right to modify, alter or discontinue any policies which no longer serve the best interests of our Credit Union or our employees." Clark signed an acknowledgement of receipt that stated, "I agree as a condition of my employment with the . . . Credit Union to abide by these policies and any others as they may change from time to time."
In October 1984, Clark was promoted to manager of the Anniston branch office. AFCU, in 1986, revised its employment manual; one of the changes was the addition of the following provision: "This manual should not be construed to be a binding contract." Copies of the revised manual were issued to all AFCU branch managers, and Clark does not deny receipt of the 1986 manual. Clark was demoted from branch manager in March 1987 and was transferred to AFCU's Talladega branch office as a loan officer. During Clark's term of employment, AFCU representatives told him that as long as he did his job he should not have any problems, and that as long as he continued to do what he was told to do there should not be any problems. AFCU terminated Clark's employment on December 31, 1987.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for determining whether to enter summary judgment. The trial court must determine: 1) that there is no genuine issue of material fact; and 2) that the moving party is entitled to a judgment as a matter of law. Rule 56; RNH, Inc. v. Beatty, 571 So.2d 1039
(Ala. 1990). In determining if summary judgment is proper, the trial court must view the motion in a light most favorable to the nonmovant, and, in reviewing a summary judgment, this Court is limited to reviewing the factors and evidence considered by the trial court when it granted the motion. Turner v. SystemsFuel, Inc., 475 So.2d 539 (Ala. 1985).
Rule 56 is to be read in conjunction with the "substantial evidence rule" for actions filed after June 11, 1987. See Alabama Code 1975, § 12-21-12; Bass v. SouthTrust Bank ofBaldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Therefore, in order to defeat AFCU's properly supported motion for summary judgment, Clark must present "substantial evidence," i.e., "evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 971 (Ala. 1989). Clark has failed to present substantial evidence in support of either his breach of contract claim or his defamation claim.
 Breach of Contract Claim
Clark argues that the trial court erred in entering summary judgment for AFCU on his breach of contract claim, because, he says, the manual he received in 1983 from AFCU created an employment contract between him and AFCU. The record is devoid of any evidence of a written or oral agreement on a definite term; absent an agreement on a definite term, any employment is considered to be "at will," and may be terminated by either party, with or without cause or justification. Bell v. SouthCentral Bell, 564 So.2d 46, 48 (Ala. 1990). However, as was noted in Bell,
 "[A]n employment-at-will relationship can be modified by provisions in an employee handbook by which the employer promises not to discharge employees except by procedures or for causes set forth in the handbook:
 " '[T]he language contained in a handbook can be sufficient to constitute an offer to create a binding unilateral contract. The existence of such a contract is determined by applying the following analysis to the facts of each case: First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by retaining employment *Page 1370 
after he has become generally aware of the offer. His actual performance supplies the necessary consideration.' "
Bell, supra, quoting Hoffman-LaRoche, Inc. v. Campbell,512 So.2d 725, 735 (Ala. 1987).
In Hoffman-LaRoche, this Court also noted that an employer may, if it so desires, state within the handbook that its policies are not an offer for a unilateral contract, and that an employer is free to modify prospectively the policies of the handbook. Hoffman-LaRoche, 512 So.2d at 734, 735 (Ala. 1987). The manual Clark received when he began his employment with AFCU provided for potential modification, alteration, or discontinuation of policies found within the manual. In 1986, AFCU modified the manual by adding the following: "This manual should not be construed to be a binding contract." Through this amendment, AFCU was exercising its privilege, underHoffman-LaRoche, not to have the manual's provisions considered as a unilateral contract for employment. Therefore, the manual Clark was issued cannot serve as an employment contract, underHoffman-LaRoche analysis. Clark was an employee at will, and his employment was subject to termination by AFCU or Clark, with or without cause. Bell, supra.
 Defamation Claim
Clark contends that it was error for the trial court to enter the summary judgment on his defamation claim. Clark insists that certain statements made by AFCU representatives to his present employer (Federal Bureau of Prisons) were defamatory. The statements were made in response to an inquiry from the United States Office of Personnel Management ("OPM") regarding Clark's employment with AFCU; the inquiry was coincident with Clark's employment application with the Federal Bureau of Prisons.
For a communication to be considered defamatory, it must tend to "[so] harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Harris v. School Annual Pub.Co., 466 So.2d 963, 964 (Ala. 1985), citing Restatement (Second) or Torts § 559 (1976). Whether a communication is defamatory is, in the first instance, a question for the court; if the communication is not reasonably capable of a defamatory meaning, then there is no issue of fact and a summary judgment is proper. Harris, 466 So.2d at 964-65.
The trial court correctly entered the summary judgment as to the defamation claim. The statements made by AFCU representatives were privileged, because they were made by AFCU representatives in response to an inquiry from a prospective employer of Clark concerning Clark's former employment with AFCU. Gore v. Health-Tex, Inc., 567 So.2d 1307 (Ala. 1990). InGore, this Court held that any publication made between a previous employer and a prospective employer is protected by a conditional privilege, pursuant to the following test:
 " ' "Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice. * * * The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken." ' "
567 So.2d at 1308 (quoting Willis v. Demopolis Nursing Home,Inc., 336 So.2d 1117, 1120 (Ala. 1976), quoting Berry v. Cityof New York Ins. Co., 210 Ala. 369, 371, 98 So. 290, 292
(1923)). Further, "[i]t is well established that, absent a showing of malice, an action alleging slander will not lie where there is a conditional or qualified privilege." Gore, Id.
There is nothing in the record to indicate actual malice on the part of AFCU in its communications with OPM and the *Page 1371 
Federal Bureau of Prisons concerning Clark. OPM and the Federal Bureau of Prisons clearly had an interest in Clark's past performance with AFCU, and, thus, the privilege is applicable. The evidence indicates that AFCU acted in good faith in complying with the request of OPM and in doing so exhibited no actual malice, which could have been shown "by evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like, emanating from the defendant [AFCU], or by the violence of the defendant's language, the mode and extent of publication, and the like."Willis v. Demopolis Nursing Home, Inc., 336 So.2d 1117 (Ala. 1976). See also, Brown v. Chem Haulers, Inc., 402 So.2d 887,891 (Ala. 1981) (plaintiff employee was precluded from recovering for alleged statement made by former employer to prospective employer concerning an accident that involved plaintiff).
In the absence of language that is defamatory per se, a plaintiff must allege and prove special damages resulting from the defamation. Myers v. Mobile Press-Register, Inc., 266 Ala. 508, 97 So.2d 819, 821 (1957). Even assuming that the statements in question were defamatory to Clark, he has neither alleged nor proven any special economic damages sustained as the result of AFCU's actions. In fact, subsequent to the alleged defamation, Clark applied for and was hired for his present position, and since then he has received three promotions; the record shows Clark has suffered no economic loss by reason of AFCU's allegedly defamatory statements.
For the reasons stated above, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ., concur.